

FILED

9:49 am, 5/8/24

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CASSANDRA MORSS,<br><br>  Plaintiff,<br><br>  v.<br><br>ONE TIME BINARY, INC., and SARAH ASHLEY NORRIS a/k/a "JANE DOE 1,"<br><br>  Defendants, | Case No.  2:23-cv-151 |

### ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS [13]

This matter is before the Court pursuant to Plaintiff's Motion for Default Judgment. (ECF No. 13.) Despite service of the Complaint (ECF No. 1) and service of the Motion for Default Judgment (ECF No. 13), Defendants have not responded to either motion. Therefore, the Court hereby grants Plaintiff's Motion for Default Judgment on Counts I, II, & III because Plaintiff made a prima facie showing of overcoming a Rule 12(b)(6) motion on those counts.

**PROCEDURAL BACKGROUND AND PLAINTIFF'S ARGUMENT**

On August 25, 2023, Plaintiff filed a Complaint against the above-named Defendants. (ECF No. 1.) After several attempts to serve Defendants, Plaintiff served the Summons and Complaint on Defendants via email correspondence (on October 19, 2023), by Telegram (on November 22, 2023), and transfer of a non-fungible token to Defendants' cryptocurrency wallet (on January 11, 2024). (ECF No. 10 at 1.) Defendants did not respond to the Complaint,

so the Clerk of Court entered default against Defendants on February 23, 2024. (ECF No. 12). Plaintiff motioned the Court for default judgment on March 25, 2024. (ECF No. 13). Defendants have not responded to Plaintiff's Motion within the fourteen days allotted by Local Rule 7.1, thus the instant Motion is ripe for ruling.

## RELEVANT LAW

Once a plaintiff files a complaint and it is served on a defendant, the Clerk of Court must enter default judgment if the defendant fails to respond in the time allotted. Fed. R. Civ. P. 55(a). After the Clerk's entry of default, Plaintiff must plead to the Court for a default judgment when the damages sum is not certain. *See* Fed. R. Civ. P. 55(b)(2). The pleadings must be sufficient for default judgment to be entered. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010). Plaintiff must also prove the Court has personal and subject matter jurisdiction and the pleadings must not be subject to dismissal under Rule 12(b)(6). *See id.* at 761–62.

After the pleadings are proved to be facially sufficient, the Court then must "consider whether the unchallenged facts constitute a legitimate cause of action since a party in default does not admit to mere conclusions of law." *Id.* at 762 (*quoting* 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). After Plaintiff "establishes a claim or right to relief that satisfies the court," the decision of whether to enter default judgment resides with the Court's sound discretion. *Harvey v. United States*, 685 F.3d 939, 946 (10th Cir. 2012); *Pawnee Leasing Corp. v. Optical Techs., Inc.*, 2024 U.S. Dist. LEXIS 56764, at *4 (D. Colo. Mar. 28, 2024). If default judgment is entered, Defendants are "deemed to have admitted the factual allegations of the complaint as true as well as the undisputed facts alleged in affidavits and exhibits." *Pawnee Leasing Corp.*, 2024 U.S. Dist. LEXIS 56764, at *3.

**RULING OF THE COURT**

**I.       Personal Jurisdiction**

This Court has personal jurisdiction in a diversity citizen lawsuit when the suit comports with state law. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022). Plaintiff has the burden of showing (1) the "exercise of jurisdiction is sanctioned by the state's long-arm statute," and (2) "that it comports with the requirements of due process under the Fourteenth Amendment." *Id.*

In addressing the first requirement, Wyoming Statute § 5-1-107(a) "extends state court jurisdiction in Wyoming to the constitutionally permissible limit." *Shanks v. Westland Equip. and Parts Co.*, 668 F.2d 1165, 1167 (10th Cir. 1982). In other words, there is no state-specific limitation and the analysis continues to the second requirement.

The second requirement is that the Plaintiff's ability to show personal jurisdiction "depends entirely on whether [this Court's] exercise of personal jurisdiction over [Defendant] comports with due process." *Eighteen Seventy, LP*, 32 F.4th at 965 (alternations in original). Due process is satisfied when the Defendants have sufficient "minimum contacts" that would not "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). "The 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1071 (10th Cir. 2008) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

In considering whether Defendant's contacts would not "offend 'traditional notions of fair play and substantial justice,'" the "defendant's contacts with the forum state must be sufficient such that, notwithstanding [the defendant's] lack of physical presence in the state, the state's exercise of sovereignty over [the defendant] can be described as fair and just." *Dudnikov*, 514 F.3d at 1070 (alterations added). "Fairness to defendants requires that a State exercise jurisdiction over a company only if the company 'exercises the privilege of conducting activities within a state—thus enjoying the benefits and protection of its laws.' *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) (*quoting Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021)).

Plaintiff claims that through online messaging, the Defendants made sufficient contacts and availed itself of the laws of the State of Wyoming. (ECF No. 13 at 5–6). This Court is satisfied with the prima facie showing that despite the Defendants not being physically present in the state, Defendants purposely directed its activities at the residents of the forum state, and that the injuries arose out of those contacts. The Court is also satisfied with Plaintiff's numerous attempts to serve and permitted service by alternative means. (ECF No. 10). Thus, this Court finds it has personal jurisdiction.

## II. Subject Matter Jurisdiction

Subject matter jurisdiction gives the Court the authority to hear a type of case. *Elna Sefcovic, LLC v. TEP Rocky Mt., LLC*, 953 F.3d 660, 666 (10th Cir. 2020). Pursuant to 28 U.S.C. § 1332, this Court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state."

In the present case, Plaintiff's suit is for: Count I: breach of contract; Count II: breach of the implied covenant of good faith and fair dealing; Count III: negligence/negligent misrepresentation; Count IV: rescission under Wyoming securities laws; and Count V: specific performance. (ECF No. 1). Plaintiff seeks compensatory damages of $45,000.00, attorney's fees, and punitive damages of no less than $500,000.00. (ECF No. 13 at 4).

The Complaint demonstrates that Defendants are more likely than not citizens of another state, showing there is diversity of citizenship. (ECF No. 13 at 4–5). Additionally, because "[p]unitive damages may be considered in determining the requisite jurisdictional amount," Plaintiff's claim for relief exceeds the $75,000 threshold. *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003). Therefore, this Court has subject matter jurisdiction over the parties.

### III. Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(a), Plaintiff obtained an entry of default from the Clerk of Court upon the Defendant's failure to defend. (ECF. No. 12). Now, to obtain her recovery, Plaintiff asks this Court enter default judgment against the Defendants under Federal Rule of Civil Procedure 55(b). (ECF. No. 13). Default judgment is necessary "when the adversary process has been halted because of an essentially unresponsive party." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).

"Decisions to enter judgment by default are committed to the district court's sound discretion" because default judgment is not a matter of right, but because of a showing that the Plaintiff is entitled to the relief sought. *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997); *Lim v. Boone*, 2021 U.S. Dist. LEXIS 254713, at *3 (D. Wyo. 2021). A "[D]efendant by his default, admits the plaintiff's well-pleaded allegations of fact[] is

precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (alteration in original) (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002)). The Court will assess each of Plaintiff's claims individually to establish the fact of liability, but the Court will not state the amount or degree of relief. *Vanasse v. Ramsay*, 847 P.2d 993, 997 (Wyo. 1993).

      **a. Count I: Breach of Contract**

To be entitled to default judgment on a claim for breach of contract, Plaintiff must show there is: "(1) a lawfully enforceable contract, (2) an unjustified failure to timely perform all or any part of what is promised therein, and (3) entitlement of injured party to damages." *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979) (numerals added). Because no written contract is alleged, Plaintiff must prove the elements of a basic contract: (1) offer, (2) acceptance, and (3) consideration. *Prudential Preferred Properties v. J & J Ventures*, 859 P.2d 1267, 1272 (Wyo. 1993) (numerals added). "To constitute consideration, a performance or a return promise must be bargained for." *Id.* (*quoting* Restatement (Second) of Contracts § 71 (1981)).

Plaintiff states there was a lawfully enforceable contract when: "[f]or good and valuable consideration, Plaintiff engaged One Time Binary ("OTB") for the management for her $45,000 and ultimately its return when Plaintiff made the decision to stop trading." (ECF No. 1 at 5). First, OTB solicited investment in their cryptocurrency trading service. *Id.* at 3. Plaintiff was then persuaded by the offer, and accepted by transferring $45,000 for the purpose of trading. *Id.* Defendants were given $45,000 to trade with to make Plaintiff money. *Id.* These allegations are "sufficient to support the conclusion that the parties expressed a mutual manifestation of an intent

6

to enter into an agreement." *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 649 (Wyo. 2003). The Court finds there was a legally enforceable contract.

As to breach, Plaintiff claims that there was an "unjustified failure to timely perform all or any part of what is promised therein" when Defendants failed to return her initial investment and alleged profits. She also alleges Defendants were operating a scheme that questions whether there was ever any investment. (ECF No. 1, at 4–5). Accepting those allegations, Defendants' actions constitute breach of contract because they induced Plaintiff's investment and have not performed their obligation to invest those funds and now refuse to return any balance to Plaintiff. *Reynolds*, 595 P.2d at 1323; (ECF No. 1, at 4–5).

Plaintiff claims she is entitled to damages for the return of her funds, attorney's fees, and punative damages when the breach of contract arises to willful or wanton conduct. The establishment of the first two elements demonstrates a showing of liability at least with respect to her initial investment for compensatory damages. Accordingly, Plaintiff demonstrated a prima facie case for breach of contract sufficient to enter default judgment on Count I and is entitled to $45,000 in compensatory damages (the initial investment) for the breach.

### b.  Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing

Wyoming Courts have adopted the Restatement (Second) of Contracts § 205, which states that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 68, 403 P.3d 1033, 1053 (Wyo. 2017) (*quoting Scherer Constr. LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶¶ 17–18, 18 P.3d 645, 652–53 (Wyo. 2001). Thus, the implied covenant of good faith and fair dealing demands that:

> neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement. Compliance with the obligation to

> perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party. A breach of the covenant of good faith and fair dealing occurs when a party interferes or fails to cooperate in the other party's performance. The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties.

*Scherer Constr.*, LLC, 2001 WY at ¶ 19, 18 P.3d at 653 (internal citations and quotations omitted).

Plaintiff claims "Norris and OTB breached the covenant of good faith and fair dealing by failing to honor Plaintiff's express instructions regarding the disposition and handling of her funds." (ECF No. 1 at 5). Further, Plaintiff stated that Defendants represented they traded her funds profitably—generating over $100,000 in returns. *Id.* at 4–5. However, to date Plaintiff has not received her initial investment or the alleged investment gains. *Id.* Further, Defendants demanded a $5,000 payment for the release of her funds and rebuffed any attempt by Plaintiff to contact another member of OTB while still seeking additional investment from Plaintiff. *Id.* Those allegations make a prima facie showing of a breach of the covenant of good faith and fair dealing because it is an utter failure "to cooperate in the other party's performance." *Scherer Constr.*, LLC, 2001 WY at ¶ 19, 18 P.3d at 653. Plaintiff is entitled to default judgment on this claim. However, because the claim is seeking the same damages as her breach of contract claim, the Court will not award "double damages" for the same injury. *Reynolds v. Tice*, 595 P.2d 1318, 1324 (Wyo. 1979) ("Once compensated for loss under the incident, plaintiff cannot be compensated again for the same loss. To do so, would be to award double damages."). In total, Plaintiff is entitled to $45,000 in damages for Defendants' conduct in performing their obligations with Plaintiff's investment.

### c. Count III: Negligence/Negligent Misrepresentation

The four elements of negligence are: "(1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the

8

defendant's breach of the duty of care proximately caused injury to the plaintiff; and (4) the injury sustained by the plaintiff is compensable by money damages." *Birt*, 75 P.3d at 658. Duty is a question of law; and breach is a question for the fact-finder. *Id.* Plaintiff pleads negligent misrepresentation as the type of negligence in the instant case. (*See* ECF No. 1, at 6). Negligent misrepresentation, as defined by Restatement (Second) of Torts § 552, "applies only to misrepresentations of facts," and not to misrepresentations of future intent or statements. *Birt*, 75 P.3d at 657–58.

To establish Defendants had a duty, Plaintiff claims "OTB and Norris owed Plaintiff common law duties to exercise reasonable care in the management of its business affairs and performance of its obligations in connection with the provision of investment management services." (ECF No. 1, at 6). The Court finds, for the purpose of default judgment, that OTB had a duty to act as a reasonably prudent investor.

To show Defendants breached their duty, Plaintiff claims OTB "acted carelessly, negligently and/or recklessly in its conduct of business . . . in violation of Plaintiff's clear instructions and established practices in the investment management industry." *Id.* Accepting Plaintiff's allegations, the Court finds the Defendants breached their duty to act as a reasonably prudent investor when "Norris negligently represented that OTB was a legitimate enterprise," and when "Norris negligently represented that OTB had difficulties in returning her funds." *Id.* Plaintiff made a prima facie showing of breach for the purposes of default judgment.

While there is almost never a guarantee of success with an investment, an investor cannot accept payment then later refuse to remit the current balance of an account. A contract may spell out procedures, timing, and fees for withdrawals, but that is different than the conduct alleged here. In essence, Defendants held themselves out as a legitimate enterprise to invest in cryptocurrency.

After accepting Plaintiff's initial investment, they represented "over $100,000 of profits had been generated." *Id.* at 3. Once Plaintiff sought a withdrawal, Defendants held her funds hostage. Those allegations align with what is commonly called a Ponzi scheme. *SEC v. Scoville*, 913 F.3d 1204, 1209 (10th Cir. 2019). (A Ponzi scheme is "a fraudulent scheme in which the business pays returns to its investors that are financed, not by the success of the business, but instead with money acquired from later investors."). In other words, it appears Defendants took Plaintiff's money without any legitimate investment plan. That conduct clearly constitutes a breach of Defendants' duty to act as a reasonably prudent investor and borders on theft. It also proximately caused Plaintiff's injuries because they induced the investment and now will not return any portion of it.

The Court finds that the Plaintiff has established a prima facie case for negligence through negligent misrepresentation based on the analysis above and will grant default judgment on Count III. Plaintiff alleges damages from the negligence and negligent misrepresentation in an amount that is no less than $45,000. *Id.* This claim is the same as her contractual claims, just under a different legal theory. The Court will not award "double damages" for the same injury. *Reynolds*, 595 P.2d at 1324. Nevertheless, this Court will find Defendants liable for negligent misrepresentation. Because compensatory damages are the same for this claim and for breach of contract, there will be no additional compensatory damages awarded. However, Plaintiff also seeks punitive damages and the Court may consider Defendants' liability for negligent misrepresentation as an underlying claim for those punitive damages.

### d. Count IV: Rescission Under Wyoming Securities Law

Plaintiff seeks rescission of her investment under Wyoming Statute § 17-4-509(e) which provides relief from when an investor is in violation of Wyoming Statute § 17-4-403(a). Wyoming Statute § 17-4-403(a) states: "It is unlawful for a person to transact business in this state as an

investment adviser unless the person is registered under this act as an investment adviser or is exempt from registration as an investment adviser under subsection (b) of this section." Subsection (b) exempts the following people from registration:

> (A) Federal covered investment advisers, investment advisers registered under this act, or broker-dealers registered under this act;
> (B) Institutional investors;
> (C) Bona fide preexisting clients whose principal places of residence are not in this state if the investment adviser is registered under the securities act of the state in which the clients maintain principal places of residence; or
> (D) Any other client exempted by rule adopted or order issued under this act.

Wyo. Stat. Ann. § 17-4-403(a). An investment advisor is "a person that, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or the advisability of investing in, purchasing, or selling securities or that, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities." Wyo. Stat. Ann. § 17-4-102(a)(xv). Plaintiff does not address whether any of the exemptions under subsection (b) apply, but instead alleged "neither of the Defendants were registered as the laws of the State of Wyoming require." (ECF No. 1, at 7).

After reviewing the Complaint, Plaintiff's claim fails because it does not appear that Defendants are considered investment advisors. Key to the definition is that an investment advisor provides "investment advice" for "compensation." Wyo. Stat. Ann. § 17-4-102(a)(xv). Both of those terms are undefined and "[w]hen a term goes undefined in a statute, [a court] give[s] the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). While Norris may have been providing investment advice, there is no compensation attributable to her of which the Court is aware.[1] Further, there are no allegations that OTB was

---

[1] Based on the limited allegations in the Complaint, the Court cannot conclude at this time Ms. Norris was offering investment advice.

providing advice on what investments Plaintiff should make on her own. Plaintiff cites to OTB's website (http://www.onetimebinary.com) and alleges that she sent money to OTB for trading. (ECF No. 1, at 3). A quick review of the website shows that OTB offers "plans" with varying commissions and minimum deposits. All reasonable inferences indicate that the operation works by persons depositing funds and Defendants thereafter effectuate transactions on their behalf. That conduct fits better within Wyo. Stat. Ann. § 17-4-102(a)(iv)'s definition of a "Broker-dealer" which is "a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account."

Broker-dealers are similarly subject to civil liability under Wyo. Stat. Ann. § 17-4-509(d), but are only liable to purchasers or sellers. From the Complaint, it does not appear Plaintiff bought or sold any securities from OTB, only that she made a cryptocurrency transfer. Further, Plaintiff did not plead a violation of Wyo. Stat. Ann. § 17-4-509(d) and the Court will not *sua sponte* make Plaintiff's own case. However, the Court will note that it is uncertain of the exact nature of the transactions. First, there must be an actual purchase or sale of a security to implicate Chapter 4 of Title 17, and the Complaint generally implies this was a fraudulent scheme where there never were any. Second, cryptocurrency is not considered a security under Wyoming law. Wyo. Stat. Ann. § 34-29-101(a)(iii) ("Digital security means a digital asset which constitutes a security, as defined in W.S. 17-4-102(a)(xxviii), but shall exclude digital consumer assets and virtual currency"). Plaintiff alleges Defendants trade in binary options, but there are not enough facts for the Court to qualify those as securities at this time. Accordingly, the Court cannot grant default judgment on Plaintiff's fourth claim for relief.

### e. Count V: Specific Performance

Plaintiff's final count to be considered for default judgment is a plea for specific performance:

> Specific performance is an equitable remedy which compels the performance of a contract on the precise terms agreed upon or such a substantial performance as will do justice between the parties under the circumstances. It is a means of compelling a contracting party to do precisely what he should have done without being coerced by a court.

*Davidson Land Co., LLC v. Davidson*, 2011 WY 29, ¶ 33, 247 P.3d 67, 76 (Wyo. 2011) (*citing* 81 C.J.S. *Specific Performance* § 2, at 701). To obtain specific performance, "the contract terms must be so certain that the court can require the specific thing agreed upon to be done. In addition, the party requesting specific performance must be able to establish that damages for breach are an inadequate and impractical remedy under the circumstances of the case." *Davis v. Harmony Dev., LLC*, 2020 WY 39, ¶ 33, 460 P.3d 230, 240 (Wyo. 2020) (internal citations, quotations, and alterations omitted). Instead of pleading that Defendants shall be compelled to invest her money, Plaintiff requests her money be returned. (ECF. No. 13 at 10). That runs counter to what specific performance provides—performance. Accordingly, specific performance is not a proper remedy for Plaintiff as pled.

### IV.   Punitive Damages

In diversity cases, state law governs the substantive elements upon which a punitive damage award may be based. *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1200 (10th Cir. 2012). Punitive damages are not favored in Wyoming and are awarded "not to provide a windfall to plaintiffs and their attorneys, but is, in fact, to publicly condemn some notorious action or inaction upon the part of the defendant." *Campen v. Stone,* 635 P.2d 1121, 1123 (Wyo. 1981). Plaintiff has alleged claims for misconduct under both a tort (negligent misrepresentation) and

breach of contract theory. Punitive damages for tort claims "are to be awarded only for conduct involving some element of outrage, such as willful or wanton misconduct." *Rosty v. Skaj*, 2012 WY 28, ¶ 34, 272 P.3d 947, 958 (Wyo. 2012) (internal citation and quotation omitted). When it comes to breach of contract claims, punitive damages are "generally not recoverable in an action upon a contract where the parties have made a written agreement between themselves setting their respective rights and obligations." *Arnold v. Mountain W. Farm Bureau Mut. Ins. Co.*, 707 P.2d 161, 164 (Wyo. 1985). However, punitive damages can be awarded in a breach of contract action "if the conduct constituting the breach rises to the level of an independent tort." *United States ex rel. Farmers Home Admin. v. Redland*, 695 P.2d 1031, 1039 (Wyo. 1985). The Defendant's conduct in the breach of contract must rise to the level of an aggravated breach, demonstrated by "spite, ill will or willful and wanton misconduct," rather than an innocent breach. *Id.* at 1039–1040.

In either event, a plaintiff must show that the defendant's conduct rose to the level of willful and wanton misconduct:

> Willful and wanton misconduct is the intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know that such conduct would, in a high degree of probability, result in harm to another.

*Herrera v. Phillipps*, 2014 WY 118, ¶ 18, 334 P.3d 1225, 1230 (Wyo. 2014) (*quoting Bertagnolli v. Louderback*, 2003 WY 50, ¶ 15, 67 P.3d 627, 632 (Wyo. 2003)).

Plaintiff has pled appropriate facts to substantiate Defendants' conduct constitutes willful and wanton misconduct. As pled by Plaintiff, Defendants' actions border on theft or fraud as they accepted Plaintiff's money, represented that the investment was successful, and have essentially refused to payout or return any of the principal investment. (ECF No. 1, at 4–5).

However, the Court cannot grant default judgment at this time. While punitive damages are discretionary in Wyoming, a court must consider "the financial condition or wealth of the defendant, the degree of reprehensibility of the defendant's conduct, and the nature and extent of the injury caused by the defendant's conduct. *Rosty*, 2012 WY 28, ¶ 34, 272 P.3d at 958. "'[I]n the absence of evidence of a defendant's wealth or financial condition an award of punitive damages cannot be sustained." *Id.* at 959 (quoting *Alexander v. Meduna*, 2002 WY 83, ¶ 40, 47 P.3d 206, 218 (Wyo. 2002). There is no evidence presented to the Court relating to Defendants' wealth which would make it an abuse of discretion to award punitive damages.

### V.     Attorney Fees

"In diversity cases, attorney fees are a substantive matter controlled by state law." *Mooring Capital Fund, LLC v. Knight*, 388 Fed. Appx. 814, 825 (10th Cir. 2010) (quoting *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008); *see also Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011). The Wyoming Supreme Court has "consistently held that Wyoming follows the American Rule which states that each party is responsible for his own attorney's fees in the absence of an express contractual or statutory provision to the contrary." *Stafford v. JHL, Inc.*, 2008 WY 128, ¶ 16, 194 P.3d 315, 318 (Wyo. 2008). Plaintiff has no statutory or contractual support for attorney fees because the Court denied default judgment for the alleged violation of Wyo. Stat. Ann. § 17-4-509(e). If Plaintiff wishes to obtain attorney fees, she must explain why she is entitled to them, either by statute or some other theory. Further, a general number for attorney fees is insufficient. Plaintiff seeks $15,000 in attorney fees with no support for any billing that occurred. The Court will not grant attorney fees without documentation of counsel's billable hours so it may assess the reasonableness of those fees as required by Wyoming Law. *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 162, 226 P.3d 889, 938 (Wyo. 2010).

## CONCLUSION

After finding that a court has personal and subject matter jurisdiction, "[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v Inter Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985). At this time, the Court finds that Plaintiff is entitled to the return of her initial investment. However, the Court cannot enter default judgment for punitive damages or attorney fees without further information. Plaintiff may file supplemental briefing or request a hearing to address those deficiencies.

IT IS HEREBY ORDERED that default judgment should be granted on Counts I, II, and III.

IT IS FURTHER ORDERED Plaintiff is awarded $45,000 in damages at this time.

IT IS FINALLY ORDERED that Plaintiff may file supplemental briefing or request a hearing to determine how and under what circumstances she is entitled to punitive damages or attorney fees.

DATED this 8th day of May, 2024.

Kelly H. Rankin
United States District Judge